IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| VERLEEN B. JESSOP,<br><br>               Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>2:15-cv-000388-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

Ms. Jessop seeks review of the ALJ's denial of her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381–1383f. Ms. Jessop protectively filed her SSI application in October 2011, alleging disability beginning August 1, 2007. (Admin. R. 17, certified copy tr. of R. of admin. proceedings: Verleen B. Jessop (hereinafter "Tr. __"), ECF No. 8.) The Administrative Law Judge ("ALJ") determined that the disability onset date for purposes of SSI began October 12, 2011. (Tr. 17, 26.) In considering that onset date, the ALJ found Ms. Jessop not disabled at step five because he found Ms. Jessop can perform other work existing in significant numbers in the national economy. (Tr. 24–25.)

After careful consideration of the record, the parties' memoranda and oral arguments, and relevant legal authorities, the Court AFFIRMS the Commissioner's Decision.[1] The Court finds substantial evidence supports the ALJ's analysis of Ms. Jessop's subjective pain symptoms. Further, the Court finds harmless error in the ALJ's analysis of Dr. Burkett's medical opinion and finds that substantial evidence supports the ALJ's rejecting his opinion. Finally, the Court

---

[1] The parties jointly consented to this Court's determination of the case under 28 U.S.C. § 636(c). (ECF No. 15.)

finds any error in the ALJ's step three analysis harmless because Ms. Jessop fails to present sufficient evidence that her impairments meet or equal Listings 1.02A or 4.11A.

### Procedural History

On October 12, 2011, Ms. Jessop protectively filed an application for supplemental security income, alleging disability beginning August 1, 2007. (Tr. 17.) Ms. Jessop claims disability due to a combination of impairments, including migraine headaches, lymphedema, arthritis in both knees, gastroparesis, severe varicose veins, high blood pressure, and borderline diabetes. (Tr. 79; *see* Pl.'s Opening Br. 3–5, ECF No. 17.) The Social Security Administration denied Ms. Jessop's claim initially and on reconsideration. (Tr. 78–87, 88–100, 103, 109.) An ALJ conducted a hearing on December 3, 2013, (tr. 35–61), and issued a decision on January 24, 2014 finding Ms. Jessop not disabled, (tr. 17–26). The Appeals Council denied Ms. Jessop's request for review, (tr. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 1383(c)(3). *See* 20 C.F.R. § 416.1481.

Ms. Jessop sought this Court's review, and on June 21, 2016, the Court heard oral argument from both parties.

### STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. § 1383(c)(3); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 1383(c)(3). Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.

1994).[2]  The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084.  "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted).  Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).  Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted).

In addition to a lack of substantial evidence, the court may reverse where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

The ALJ found Ms. Jessop retains the residual functional capacity (RFC) to perform sedentary work, except that she can only stand and/or walk for two hours total and sit for six hours total during an eight-hour workday with a sit/stand option at will.  (Tr. 21.)  Based on Ms. Jessop's age, education, work experience, and this RFC, the ALJ found Ms. Jessop could perform sedentary unskilled occupations existing in significant numbers in the national economy,

---

[2] Courts apply the same analysis in determining disability under Title II and Title XVI.  *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

such as a food and beverage order clerk, telephone quotation clerk, and callout operator. (Tr. 25.)

In support of her claim that this Court should reverse the Commissioner's Decision, Ms. Jessop argues that the ALJ (1) failed to evaluate the medical opinion evidence properly, particularly Dr. Burkett's medical opinion; (2) erred in analyzing whether Ms. Jessop's impairments equaled Listings 1.02A and/or 4.11A; and (3) failed to evaluate Ms. Jessop's subjective symptoms properly. (*See* Pl.'s Opening Br. 7–20, ECF No. 17.) The Court starts its review with the ALJ's analysis of Ms. Jessop's subjective symptoms.

### I.     Ms. Jessop's Pain.

Mr. Jessop argues the ALJ did not evaluate her allegations of disabling subjective symptoms properly under SSR 96-7p and *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). (Pl.'s Opening Br. 17–18, ECF No. 17.) Specifically, Ms. Jessop takes issue with the ALJ's analysis of her pain. (*Id.* at 18–19.) Ms. Jessop argues that the ALJ, in discounting her allegations of pain, failed to view the record as a whole, instead focusing on discrete records, and even taking them out of context. (*Id.* at 18.) Upon review, this Court finds substantial evidence supports the ALJ's analysis of Ms. Jessop's subjective symptoms, namely, pain.

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's

assertions of severe pain and decide the extent to which the ALJ believes the claimant's

assertions. *Id.* To make this analysis, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts
> (medical or nonmedical) to obtain relief, the frequency of medical contacts, the
> nature of daily activities, subjective measures of credibility that are peculiarly
> within the judgment of the ALJ, the motivation of and relationship between the
> claimant and other witnesses, and the consistency or compatibility of nonmedical
> testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted). But this analysis "does not require a

formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific

evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ followed the prescribed process for evaluating Ms. Jessop's self-reported

symptoms. The ALJ found one could reasonably expect Ms. Jessop's impairments to cause the

alleged symptoms but found Ms. Jessop's statements concerning the intensity, persistence, and

limiting effects of the symptoms "not entirely credible." (Tr. 22.)

Considering the levels of medication and their effectiveness, the ALJ noted that Ms.

Jessop received "appropriate treatment including surgery that has helped to resolve some of her

conditions while prescribed medications effectively control her other conditions." (Tr. 22.) In

particular, the ALJ noted Ms. Jessop "does not take a significant amount of pain medication."

(Tr. 23; *see Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (noting fact that impairment was

well-controlled supported ALJ's conclusion that claimant was not disabled).) The ALJ also

noted the clinic managing Ms. Jessop's chronic pain treated her conservatively, prescribing the

same medications over time, as well as a healthy diet, home exercise, and increased water intake,

even as Ms. Jessop's reports of pain fluctuated in intensity. (Tr. 22–23, 736–753, 855–57; *see* tr.

748 (noting Ms. Jessop "reports that her pain has been adequately controlled by her current pain

medication regimen").)  The ALJ observes that in these same records Ms. Jessop reports she can perform activities of daily living, despite the increased pain.  (Tr. 23–24.)

As to the extensiveness of the attempts (medical or nonmedical) to obtain relief and frequency of medical contacts, the ALJ certainly acknowledges Ms. Jessop "has received frequent and ongoing treatment."  (Tr. 23.)  Ms. Jessop contends the ALJ did not account for her abdominal pain due to gastroparesis even after surgery.  (Pl.'s Opening Br. 18, ECF No. 17.)  Though gastroparesis is chronic and incurable, the objective evidence supports the ALJ's finding that Ms. Jessop's current abdominal pain does not support *disabling* symptoms.  (*See* tr. 19, 22; *see also* tr. 528 (CT scan from October 2010 showing unremarkable abdomen and pelvis), 538–39.)  The record shows Ms. Jessop did not seek medical treatment for gastrointestinal problems after April 2011.  (*See id.*; *see also* tr. 818, 936 (showing Ms. Jessop had symptoms of gastroparesis in 2012 and 2013 but those were not the focus of treatment).)  The ALJ also considers that Ms. Jessop's doctors consistently recommended Ms. Jessop lose weight to assist in alleviating her knee and leg pain but that Ms. Jessop failed to reduce her weight over time.  (*See* tr. 23 (citing tr. 684, 856).)  Thus, Ms. Jessop has not sought ongoing treatment for her gastroparesis and has not availed herself of pain relief that could come from weight loss.

The ALJ also found Ms. Jessop's "significant array of activities of daily living, including caring for eight children, driving daily, reading, sewing, visiting friends, attending church, and performing light household chores" undercut her allegations of total disability and "indicate that [Ms. Jessop] is more capable of functioning than alleged."  (Tr. 23.)  The ALJ found Ms. Jessop is a homemaker who lives with her husband and eight children, ranging in age from a newborn to twelve years old in 2012, and that "[s]he can drive daily, take her children to/from school, read, sew, go out alone, shop, and handle money.  She can cook, make beds, watch television, watch

the children, dress, and groom." (Tr. 20; *see* tr. 209, 667, 688.) The ALJ found Ms. Jessop

"talks on the telephone regularly, socializes with her girlfriends 3-4 times per week, and attends

church once a week." (Tr. 20.) At step four, the ALJ reiterates these activities provide one basis

for discrediting Ms. Jessop's allegations of disabling pain, again relying on Ms. Jessop's

progress notes that describe her as a homemaker. (Tr. 23, 894; *Castellano v. Sec'y of Health &*

*Human Servs.*, 26 F.3d 1027, 1029–30 (10th Cir. 1994) (holding claimant's daily activities

provided a reason for finding claimant's allegations of pain not fully credible).) The ALJ relied

on progress notes from 2012 and 2013 that broadly identify Ms. Jessop as a homemaker, (tr. 23,

894), capable of performing activities of daily living, (tr. 22, 23, 736–37; *see also* 741, 742, 744).

The ALJ also relies on Ms. Jessop's March 2012 Function Report and the November 2013

Activities of Daily Living ("ADLs") Summary Sheet. (*See* tr. 20, 23, 208–15, 255–56.) Thus,

the Court finds substantial evidence supports the ALJ's summary of Ms. Jessop's daily activities.

Ms. Jessop objects that the ALJ mischaracterizes this evidence of her daily activities.

(*See* Pl.'s Opening Br. 19, ECF No. 17.) In particular, Ms. Jessop takes issue with the ALJ's

reliance on exhibits that summarily report Ms. Jessop as a homemaker, (e.g., tr. 894), when her

March 2012 Function Report shows limited homemaking ability. (Pl.'s Opening Br. 10, 19, ECF

No. 17; *see* tr. 209–12.) However, the Court sees no discrepancy in identifying Ms. Jessop as a

homemaker when the documents relied on by the ALJ show Ms. Jessop can maintain many self-

care and homemaking activities on healthy days, even while also relying on assistance from her

older children in completing some of these same activities during days with severe symptoms.

(*See* tr. 210–12.) The ALJ could reasonably conclude that Ms. Jessop's self-reported activities

do not paint a picture of "sporadic performance" of household tasks but rather an array of

homemaking activities occasionally limited by pain symptoms or bad days where Ms. Jessop needs assistance.

This Court gives the ALJ's credibility determination a common sense reading. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (holding courts "must[] exercise common sense[,] . . . but we cannot insist on technical perfection."). While the ALJ could have analyzed Ms. Jessop's functional abilities more comprehensively, the Court finds substantial evidence supports the ALJ's overall accounting of Ms. Jessop's daily activities.

The ALJ does not comment on any subjective measures of credibility peculiarly within the ALJ's judgment or the motivation of and relationship between the claimant and other witnesses. The parties do not claim any error in the ALJ's decision not to discuss these factors.

As to the consistency or compatibility of nonmedical testimony with objective medical evidence, the ALJ explained that "there is no medical support for accepting all of [Ms. Jessop's] subjective complaints," because while Ms. Jessop "has received frequent and ongoing treatment . . . the objective medical findings do not demonstrate disability." (Tr. 23.) The ALJ cited to progress notes indicating Ms. Jessop had done "quite well" with appropriate medical treatment. (*Id.*) Ms. Jessop challenges the ALJ's analysis of her treatment for knee pain and lymphedema in discrediting her symptoms. (Pl.'s Opening Br. 19, ECF No. 17.) The ALJ found Ms. Jessop's allegations regarding the intensity and persistence of her knee pain and congenital lymphedema inconsistent with the medical evidence. (*See* tr. 23.) The ALJ cites progress reports from 2011 showing increased activity, decreased knee pain, and no give-way episodes, (tr. 22–23, 601; *see also* 617), as well as progress notes from 2013 showing normal gait, minimal crepitance, a full range of motion of the knees, and x-rays showing normal osseous contours and alignment in the left knee, (tr. 22–23, 894 ; *see also* tr. 899–90 (2012 progress notes showing the same findings as

well as a normal right knee x-ray, despite Ms. Jessop's complaints of pain). The ALJ also addressed Ms. Jessop's reports of pain levels, noting that the medical record shows she could still perform daily activities despite reporting an eight out of ten pain level. (Tr. 23, 736–37.) Thus, substantial evidence supports the ALJ's conclusion that the objective evidence of Ms. Jessop's knee pain and lymphedema did not demonstrate findings commensurate with disabling pain.

Lastly, the ALJ obviously credited Ms. Jessop's testimony on her sitting and standing limitations because he limited her to standing and/or walking for two hours total and sitting for six hours total during an eight-hour workday with a sit/stand option in the RFC. (*Compare* tr. 21 *with* tr. 58.) That limitation comes in addition to a limitation to sedentary work. (Tr. 21.) Thus, the ALJ recognized that Ms. Jessop's impairments caused significant physical limitations, including pain. The ALJ simply did not credit her testimony completely.

In sum, the Court finds the ALJ reasonably discounted Ms. Jessop's subjective complaints of disabling pain, articulating specific reasons for his findings supported by substantial evidence. *See Qualls*, 206 F.3d at 1372 (requiring ALJ to set forth specific evidence relied on); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (finding ALJ reasonably discounted claimant's testimony where her activities of daily living "indicated the ability to care for herself, her home and her children," including the ability to drive, shop, handle finances, garden, visit friends, and eat out). The Court does not doubt that Ms. Jessop experiences pain as a result of her surgeries and chronic impairments and that sometimes her medication proves less effective in controlling her symptoms. (*See, e.g.*, tr. 511, 857.) However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."

*Gossett*, 862 F.2d at 807 (quoting *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986)).  A reasonable mind could conclude that the several specific reasons identified by the ALJ undercut Ms. Jessop's allegations of disabling pain.  *See Lax*, 489 F.3d at 1084.  Therefore, the Court finds substantial evidence supports the ALJ's credibility determination.

## II.       The ALJ's Evaluation of Dr. Burkett's Opinion.

Ms. Jessop next argues that the ALJ erred in evaluating the medical evidence on record. (Pl.'s Opening Br. 2, 8–11, ECF No. 17.)  While the ALJ failed to provide sufficient analysis to reject Dr. Burkett's testimony initially, when the Court considers the ALJ's opinion as a whole, the ALJ provided sufficiently explicit reasons for rejecting Dr. Burkett's opinion, and, as such, the Court finds the error in the ALJ's evaluation of Dr. Burkett's testimony harmless.

An ALJ must evaluate every medical opinion.  20 C.F.R. § 416.927(c).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [the claimant's] symptoms, diagnosis and prognosis . . . ."  20 C.F.R. § 416.927(a)(2).  When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence).  The Social Security Administration considers "all evidence from nonexamining sources to be opinion evidence," including medical expert testimony.  20 C.F.R. § 416.927(e).  The opinions of consulting physicians or those who only review the medical records and never examine the claimant generally deserve less weight than treating or examining physicians.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Moreover, the Tenth Circuit has cautioned that the "findings of a nontreating physician based upon limited contact and examination are of suspect reliability."  *Frey*, 816 F.2d at 515.

However, to reject a medical opinion, the ALJ must provide "specific, legitimate reasons." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).

Dr. Rox Burkett, a certified senior disability analyst, did not treat or examine Ms. Jessop but reviewed Ms. Jessop's medical record and provided expert testimony at the disability hearing. (*See* tr. 40–42.) Ms. Jessop first contends the ALJ erred in rejecting Dr. Burkett's testimony that Ms. Jessop's congenital lymphedema and advanced degenerative knee issues would reasonably equal Listings 1.02A and 4.11A. (Pl.'s Opening Br. 8–11, ECF No. 17; tr. 24, 43, 50.) In rejecting Dr. Burkett's opinion on the Listings, the ALJ explained Ms. Jessop's impairments "lack[] the severity to satisfy the [Listings'] criteria because the conditions are adequately controlled with treatment." (Tr. 21.) The ALJ errs by rather summarily rejecting Dr. Burkett's medical expert testimony at this point. However, the regulations clearly reserve any finding as to whether a claimant's impairments meet or equal a listing to the ALJ, even where the record contains other medical expert opinions on the issue. 20 C.F.R. § 416.927(d). Furthermore, the ALJ subsequently discusses Dr. Burkett's opinion and states "good reasons" for giving no weight to Dr. Burkett's expert testimony. (*See* tr. 21–24; *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013).)

During the RFC analysis, the ALJ assigns "no weight" to Dr. Burkett's testimony that Ms. Jessop "would require more than normal work breaks and elevating her legs at waist level through the day, which would preclude her from sustaining full-time employment." (Tr. 24; *see* tr. 52.) The ALJ notes that "there are no detailed clinical findings to support Dr. Burkette's [sic] conclusory opinion of disability" and that his "opinion is unsupported and inconsistent with other

evidence of record including progress notes and [Ms. Jessop's] reported ability to perform daily activities." (*Id.*)

Ms. Jessop argues the ALJ, in giving no weight to Dr. Burkett's opinion, fails to acknowledge Ms. Jessop's continuing problems with ambulation and pain and medical opinions about her poor prognosis and the severity of her conditions. (Pl.'s Opening Br. 9–10, ECF No. 17.) The records Ms. Jessop cites in support of this argument show Ms. Jessop reported episodes of leg, back, and neck pain during 2011, (tr. 637–38), such that her treating physicians referred her to an advanced pain management clinic that recommended treatment with medications that more or less effectively control her pain symptoms, (tr. 667–68, 855–57). In September 2013, Ms. Jessop reports that pain medications manage her ankle swelling from her lymphedema and that "her pain medication typically manages [her chronic back and neck pain] well." (Tr. 935–36.) Clinical notes from the next month show Ms. Jessop reports diminished efficacy of her medication and a worsened quality of life, (tr. 857), but she also denied any change in the characteristics of the pain and any new symptoms since her last visit, (tr. 856). The pain management clinic increased her medication by allowing her to take five doses of Norco a day instead of four but made no other recommendations. (*Compare* tr. 857 *with* tr. 935.) This change occurred after months of no change to the pain medication. (Tr. 858–89, 736–43.) Thus, the records cited by Ms. Jessop do not undermine the ALJ's conclusion that the clinical findings and progress notes do not support Dr. Burkett's opinion of disability.

Ms. Jessop also argues that because the ALJ mischaracterized Ms. Jessop's activities of daily living, those activities do not provide substantial evidence to support discounting Dr. Burkett's opinion. (Pl.'s Opening Br. 10–11, ECF No. 17.) However, this Court found substantial evidence supports the ALJ's review of Ms. Jessop's daily activities, *supra* pp. 6–8;

thus, the ALJ properly considered Ms. Jessop's daily activities as inconsistent with Dr. Burkett's opinion that Ms. Jessop is disabled.  *See Newbold*, 718 F.3d at 1266 (affirming ALJ's reliance on claimant's daily activities as inconsistent with and providing a reason for discounting a treating physician's opinion).

Additionally, Ms. Jessop argues the ALJ should have credited Dr. Burkett's opinion as supported by several of the other factors, *i.e.*, his experience and review of the entire record. (Pl.'s Opening Br. 11, ECF No. 17; *see* 20 C.F.R. § 416.927(c).)  Yet the ALJ's decision need not discuss explicitly all of the factors for each of the medical opinions.  *See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)* (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review).  The ALJ determined that the clinical findings did not support Dr. Burkett's opinion and that other record evidence, including progress notes and Ms. Jessop's daily activities, did not support and even contradicted Dr. Burkett's opinion.  (*See* tr. 24.)  The ALJ properly considers such factors under § 416.927(c).  Furthermore, as the Commissioner points out, Dr. Burkett's opportunity to review the entire record does not affect the outcome here because Dr. Burkett mainly relied on evidence from 2008 to 2011.  Most of that evidence relates to problems Ms. Jessop suffered prior to the administrative disability onset date of October 12, 2011.  (Tr. 17, 26.)  Dr. Burkett also mentions Ms. Jessop's referral to pain management in 2012, but does not review those treatment records in detail or do more than reference her chronic pain management to support his opinion that Ms. Jessop's impairments disable her.  (*See* tr. 46–50.)  At least two other agency physicians reviewed the record through August 2012, after Ms. Jessop received a referral to chronic pain management, and found Ms. Jessop not disabled on the evidence submitted.  (*See* tr. 89–100,

853.)  Thus, in this case, the opportunity to review the entire record did not reveal significant additional evidence the other physicians did not review.

In sum, the Court concludes that substantial evidence supports the ALJ's discounting Dr. Burkett's medical opinion.  The ALJ provided adequate reasons for assigning no weight to Dr. Burkett's opinion concerning Ms. Jessop's ability ambulate and need to take breaks and elevate her legs.

### III.    The ALJ's analysis of Listings 1.02A and 4.11A.

Ms. Jessop argues that the ALJ erred in evaluating whether her impairments met or equaled Listings 1.02A and/or 4.11A.  (Pl.'s Opening Br. 12, ECF No. 17.)  Ms. Jessop emphasizes that the record otherwise contains ample evidence of her inability to ambulate effectively under Listing 1.02A, as well as other chronic symptoms from her lymphedema that at least equal the severity of Listing 4.11A.  (*Id.* at 13–16.)

20 C.F.R. Part 404, Subpart P, Appendix 1 lists impairments that preclude substantial gainful employment.  *See* 20 C.F.R. § 416.925(a) (describing the purpose of the listings).  At step three, the ALJ must evaluate whether a claimant's impairment or impairments, considered singly or in combination, meet or equal one of the impairments listed in the appendix of the relevant disability regulation; if the impairment meets a listing, the factfinder presumes the claimant disabled.  *See* 20 C.F.R. § 416.920(a)(4)(iii); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  The claimant bears the burden of showing her impairment meets or equals the requirements of a listed impairment.  *Fischer-Ross*, 431 F.3d at 733.  For an ALJ to find a claimant meets a listing, the claimant's impairment must "satisf[y] all of the criteria of that listing, including any relevant criteria in the introduction, and meet[] the duration requirement."  20 C.F.R. § 416.925(c)(3).  "An impairment that manifests only some of those criteria, no matter

how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If a claimant's impairment does not meet a listing, her impairment may constitute the medical equivalent if she has "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(ii). Only the ALJ can determine medical equivalence, and the ALJ need not defer to a state agency consultant's findings or expert opinion evidence. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Where the claimant does not meet or equal a listing the ALJ must "discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations omitted).

At step three, the ALJ found Ms. Jessop does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20.) In arriving at this conclusion, the ALJ states that "no objective medical evidence in the record" indicates Ms. Jessop's impairments meet or equal a listing, and that "[n]o credible physician has opined that [Ms. Jessop's] impairments satisfy the criteria of a listing." (Tr. 20–21.) The ALJ explains that he considered the listings and Ms. Jessop's impairments "lack[] the severity to satisfy the criteria because the conditions are adequately controlled with treatment." (Tr. 21.) The ALJ further notes that Ms. Jessop's bilateral knee osteoarthritis "does not preclude effective ambulation," her pericardial effusion condition resolved with treatment, and she testified to doing "pretty well now" with her heart shunt. (*Id.*) The Court finds this explanation fails to satisfy *Clifton* due to insufficient analysis.

But inadequate analysis at step three may constitute harmless error if the "ALJ's findings at other steps of the sequential process [] provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-*

*Ross*, 431 F.3d at 733.  In general, a court may find an error harmless when "based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Id.* at 733–34 (internal quotation marks and citation omitted).  If, however, no findings "conclusively negate the possibility" that a claimant can meet a relevant listing, *id.* at 735, the Court must remand to the ALJ for further findings.  *Clifton*, 79 F.3d at 1009–10.  The finds the error in the ALJ's analysis that Ms. Jessop's impairments do not met or equal Listings 1.02A or 4.11A harmless because the opinion as a whole provides the additional analysis.

> A.  *Listing 1.02A*

To satisfy Listing 1.02A, the claimant must show:

> [a] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability), and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P. app. 1 § 1.02.

The parties focus their arguments on the evidence concerning Ms. Jessop's ability to ambulate effectively due to multiple factors—arthritis, lymphedema, varicose veins, and obesity.  The ALJ finds Ms. Jessop's bilateral knee osteoarthritis "does not preclude effective ambulation," as required by Listing 1.02A.  (Tr. 21.)  Ms. Jessop argues the ALJ failed to reference the record in support of his finding that her impairments did not preclude effective ambulation when, in fact, the record contains evidence of severe impairment in her bilateral extremities showing an inability to ambulate effectively.  (Pl.'s Opening Br. 13–14, ECF No. 17.)  The Commissioner responds that the ALJ noted clinical findings supported limiting Ms.

Jessop to sedentary work, as discussed in the ALJ's subsequent RFC findings, but did not preclude effective ambulation as required by the Listing. (Def.'s Answer Br. 12, ECF No. 24; tr. 21.)

The listings define the inability to ambulate as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B(2)(b)(1). To assess the claimant's ability to ambulate, the ALJ must determine whether she is:

> capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. [She] must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* § 1.00B(2)(b)(2).

The ALJ's decision contains several findings relating to Ms. Jessop's ability to ambulate. Most importantly, when determining Ms. Jessop's RFC, the ALJ noted that "she is limited to standing and/or walking for 2 hours total . . . in an 8-hour workday" and required that any job allow her to alternate between sitting and standing at will. (Tr. 21.) Thus, the ALJ recognized Ms. Jessop's difficulty with ambulating and any job Ms. Jessop would perform would require a minimal amount of it.

After a right knee arthroscopy in July 2011, the ALJ noted that by October 2011 Ms. Jessop could "ambulat[e] more smoothly with increased activity level, decreased knee pain, and no give-way episodes." (Tr. 22, 601.) This same treatment record showed Ms. Jessop had only a

17

"mildly antalgic gait" at this time. (Tr. 602.) The ALJ also cited progress notes from October 2013 that "reported a normal gait, minimal crepitance, and full range of motion of the knees." (Tr. 22, 894.) The ALJ observes that this record also reflects Ms. Jessop had increased pain with recently increased use of stairs, (tr. 23, 893), but the doctor merely recommended Ms. Jessop "proceed with activities as tolerates, going easy on the stairs," (tr. 893, 895). The ALJ also cites the doctor's evaluation of knee x-rays showing "normal osseous contours and alignment with no evidence of fractures or dislocations." (Tr. 22, 894.) The ALJ found treatment, including pain medication, effectively controlled Ms. Jessop's symptoms. (Tr. 22–23.) The ALJ also found Ms. Jessop "capable of performing a significant array of activities of daily living," as discussed above. (Tr. 23.)

Ultimately, Ms. Jessop has the burden to prove her disability at step three. *See Lax,* 489 *F.3d at* 1085 (acknowledging claimant must provide specific medical findings that support each of the various requisite criteria for the impairment). Besides her own descriptions of difficulty ambulating and some clinical notes recording a mildly antalgic gait, Ms. Jessop did not provide medical findings to suggest she cannot, for example, walk a block at a reasonable pace or climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B(2)(b)(2).

As to Ms. Jessop's use of assistive devices, the record merely shows Ms. Jessop sometimes uses a cane or crutches and does so particularly after her surgeries or when she has periodic cellulitis or knee and leg pain, (tr. 214, 483), and that she uses an electric wheelchair when grocery shopping, (tr. 211, 255). This evidence shows Ms. Jessop has difficulty ambulating, especially with increased periods of ambulation or during traumatic medical events like surgery; however, having difficulty ambulating does not equate with an inability to ambulate

effectively.  Though her impairments are chronic and degenerative over time, Ms. Jessop submits

no evidence suggesting her knee problems, even as exacerbated by her lymphedema, varicose

veins, and obesity, rise to a level of severity during this time period that would warrant a

presumptive disability finding under the listings.  *See Zebley*, 493 U.S. at 532.

Overall, the ALJ's RFC findings coupled with other record evidence and Ms. Jessop's

own representations show that Ms. Jessop does not currently meet any of 1.00B's examples of an

inability to ambulate effectively and negate the possibility that Ms. Jessop's impairments meet or

equal Listing 1.02A.  Thus, even if the ALJ had analyzed Ms. Jessop's knee issues in more detail

at step three, the Court finds any error harmless because the remainder of the ALJ's decision

reflects his finding, supported by substantial evidence, that Ms. Jessop's impairments do not

preclude effective ambulation.

### B.  Listing 4.11

Ms. Jessop also argues that her impairments, including her congenital lymphedema, equal

Listing 4.11A.  (Pl.'s Opening Br. 14–16, ECF No. 17.)  Ms. Jessop challenges the ALJ's

conclusion that treatment controls Ms. Jessop's impairments and notes that the ALJ does not

discuss any of the specific criteria of Listing 4.11A in the step three analysis.  (*Id.* at 16.)

To satisfy Listing 4.11A or B, the claimant must show:

Chronic venous insufficiency of a lower extremity with incompetency or
obstruction of the deep venous system and one of the following:

A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg
between the ankle and knee or the distal one-third of the lower extremity between
the ankle and hip.

OR

B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or
persistent ulceration that has not healed following at least 3 months of prescribed
treatment.

20 C.F.R. pt. 404, subpt. P. app. 1 § 4.11.  At 4.00G3, the listings define brawny edema as "swelling that is usually dense and feels firm due to the presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes."  *Id.* at § 4.00(G)(3).  The listings note that lymphedema does not meet the requirement of 4.11 but also acknowledge that lymphedema may medically equal the severity of 4.11, or a musculoskeletal listing like 1.02A.  *Id.* at § 4.00(G)(4)(b).

Ms. Jessop again challenges the ALJ's finding that treatment controls her impairments because congenital lymphedema is degenerative, and physicians say they can do nothing to improve her functioning.  (Pl.'s Opening Br. 15–16, ECF No. 17.)  However, the ALJ noted that, despite Ms. Jessop's chronic impairments she does function, and the clinic managing her pain simply recommended Ms. Jessop lose weight, do active rehabilitation, and take her medication as prescribed.  (Tr. 22, 684.)  Ms. Jessop also cites several records from 2008, 2009, and 2011 showing chronic swelling, pain, stiffness, and cellulitis despite her treatment and surgeries.  (Pl.'s Opening Br. 15–16, ECF No. 17 (citing tr. 287, 293, 297, 322, 343, 358, 379, 391, 410, 443, 451, 629, 631,636, 638, 646).)  Significantly, these records reflect recurrent cellulitis and associated swelling, discoloration, and pain in Ms. Jessop's legs that occurred prior to the relevant period and has not recurred since.  Moreover, the ALJ noted no treating physician on record opined that Ms. Jessop's chronic impairments disable her, and the ALJ rejected Dr. Burkett's opinion on the listings as inconsistent with the objective evidence.  (Tr. 24.)  Furthermore, Ms. Jessop's counsel agreed at oral argument that the touchstone of disability for her client under either Listing 1.02A or 4.11A is her ability to ambulate during the period under consideration.  The Court finds any error in the ALJ's consideration of Listing 4.11A or its

equivalent harmless because the ALJ clearly found Ms. Jessop could effectively ambulate, and substantial evidence in the record supports that finding.

Ms. Jessop also argues that the ALJ does not address how her obesity affects the listings analysis. (Pl.'s Opening Br. 15–16, ECF No. 17.) However, she does not argue that the record shows objective evidence of disabling limitations caused by her obesity. None of the medical evidence identified any specific restriction on Ms. Jessop's ability to work attributable to obesity. Nor did Ms. Jessop attribute any of her restrictions to obesity in her testimony at the ALJ hearing. In discussing the RFC findings, the ALJ notes he "considered the alleged pain and obesity, but it is only mild to moderate in severity, and does not limit her functioning to a disabling degree." (Tr. 23.) The ALJ acknowledges Ms. Jessop's morbid obesity "exacerbates" her knee issues and mobility limitations and thus included the sit/stand option in Ms. Jessop's RFC. (Tr. 22–23, 24.) Therefore, the ALJ clearly considered Ms. Jessop's morbid obesity and its functional effect but found the record evidence did not support finding Ms. Jessop's obesity disabling. *See* SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002) (prohibiting "assumptions about the severity or functional effects of obesity combined with other impairments;" requiring instead an individualized assessment of impacts).

In sum, the Court finds the ALJ's step three analysis constitutes harmless error because his RFC findings negate the possibility that Ms. Jessop's impairments equal Listings 1.02A or 4.11A.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 29th day of July, 2016.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge